23-35
*Cohen v. Trump*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of January, two thousand twenty-four.

PRESENT:
> BARRINGTON D. PARKER
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

Michael D. Cohen,

    *Plaintiff-Appellant*,

v.      No. 23-35

Donald J. Trump, Former President of the United States, William P. Barr, Former Attorney General of the United States, Michael D. Carvajal, Director of the Bureau of Prisons, Jon Gustin, Administrator of the Residential Reentry Management Branch of the Bureau of Prisons, Patrick McFarland, Residential Reentry Manager of the Federal Bureau of Prisons, James Petrucci, Warden of FCI Otisville, Enid Febus, Supervisory Probation Officer of the United States Probation and Pretrial Services, Adam Pakula, Probation Officer of the United States Probation and Pretrial Services,

*Defendants-Appellees.*\*

|  |  |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | JON-MICHAEL DOUGHERTY (Kami E. Quinn, Sarah Sraders, Gilbert LLP, Washington, D.C.; E. Danya Perry, Perry Guha LLP, New York, NY; *on the brief*), Gilbert LLP, Washington, D.C. |
| **FOR DEFENDANT-APPELLEE DONALD J. TRUMP:** | ALINA HABBA (Michael T. Madaio, *on the brief*), Habba Madaio & Associates LLP, Bedminster, NJ, New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | ALYSSA B. O'GALLAGHER (Allison M. Rovner, Benjamin H. Torrance, *on the brief*), Assistant United States Attorneys, Of Counsel, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Michael D. Cohen ("Cohen") appeals portions of the district court's November 15, 2022 judgment dismissing his claims against Defendants-Appellees. At issue in this appeal is whether Cohen has a claim for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants-Appellees for purported violations of the Fourth and Eighth Amendments of the United States Constitution. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

---

\* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

**BACKGROUND**

Cohen worked as an attorney and advisor for former President of the United States Donald J. Trump ("Trump") both before and during Trump's term as President.[1] In the fall of 2018, Cohen pled guilty to various violations of federal law and was sentenced to thirty-six months' incarceration. Cohen began serving his sentence on May 6, 2019, at Federal Correctional Institution Otisville ("FCI Otisville"). During his incarceration, Cohen wrote a draft of a book detailing his experiences with Trump, which Cohen publicly stated would portray Trump in a negative and critical light.

Cohen was released from FCI Otisville on furlough to home confinement on May 12, 2020, after the Bureau of Prisons ("BOP") had approved Cohen's petition for early release in the wake of the COVID-19 pandemic. Cohen made additional public statements about his book while on furlough. In July 2020, Cohen was instructed to visit the United States Probation and Pretrial Services ("PTS") office. When Cohen and his attorney visited the PTS office, a supervisory probation officer and a probation officer presented them with a Federal Location Monitoring Program Participant Agreement ("FLMPP Agreement"). The FLMPP Agreement prohibited Cohen from engaging with the media and from using any social media platform. Cohen and his attorney asked the probation officers if it was possible to change the FLMPP Agreement to remove or revise this language, and the probation officers responded that they would speak to their supervisors. After Cohen waited approximately ninety minutes for the probation officers' return, three deputy United States Marshals entered the room and served Cohen with a remand order. The

---

[1] We take Cohen's factual allegations from his complaint. *See* App'x at 11–37. We are "required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

3

probation officers informed Cohen that the situation was out of their hands and the FLMPP Agreement had been rescinded. The deputy Marshals took Cohen into custody.

Cohen was transported back to FCI Otisville where the warden ordered that Cohen be placed in solitary confinement. Cohen was placed in solitary confinement for sixteen days where he spent roughly twenty-three and a half hours a day alone with poor ventilation and no air conditioning. On July 20, 2020, Cohen filed a petition for a writ of habeas corpus and a motion for an emergency temporary restraining order ("TRO") in the United States District Court for the Southern District of New York. *See Cohen v. Barr*, No. 1:20-cv-05614-AKH, ECF Nos. 1, 4 (S.D.N.Y. July 20, 2020). On July 23, 2020, the district court held a hearing on Cohen's petition for a writ of habeas corpus and motion for an emergency TRO, and subsequently, it issued an injunction ordering Cohen's release from custody.[2] Cohen was released to home confinement on July 24, 2020.

In December 2021, Cohen filed this civil action against Defendants-Appellees. Cohen alleges that Defendants-Appellees retaliated against him for his public comments and his anticipated book criticizing Trump. He further alleges that the revocation of his furlough and home confinement, and subsequent remand to BOP custody, violated the Fourth Amendment's protection against unreasonable seizures, and that his placement in solitary confinement violated the Eighth Amendment's protection against cruel and unusual punishment. Defendants-Appellees moved to dismiss Cohen's complaint arguing that, among other things, Cohen did not have a claim under *Bivens*. The district court granted Defendants-Appellees' motions and dismissed Cohen's claims. Cohen timely appealed.

---

[2] The district court stated: "The Court finds that Respondents' purpose in transferring Cohen from release on furlough and home confinement back to custody was retaliatory in response to Cohen desiring to exercise his First Amendment rights to publish a book critical of the President and to discuss the book on social media." App'x at 39.

4

**DISCUSSION**

Congress has never "provide[d] a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). In 1971, however, the Supreme Court in *Bivens* created an implied cause of action such that "damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials." 403 U.S. at 395. The Supreme Court has only extended *Bivens* two times. First, in 1979, the Supreme Court recognized a Fifth Amendment claim for damages against a United States Congressman for wrongful termination based on gender discrimination. *See Davis v. Passman*, 442 U.S. 228 (1979). Second, in 1980, the Supreme Court recognized an Eighth Amendment claim for damages against federal prison officials for deliberate indifference to an inmate's serious medical needs. *See Carlson v. Green*, 446 U.S. 14 (1980). Since *Carlson*, the Supreme Court "ha[s] declined [twelve] times to imply a similar cause of action for other alleged constitutional violations." *Egbert v. Boule*, 596 U.S. 482, 486 (2022) (collecting cases).[3]

Before a court may extend *Bivens*, it must "engage in a two-step inquiry." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). The first step requires a court to determine "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). We interpret "new context" broadly, and a context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by'" the Supreme Court. *Id.* (quoting *Ziglar*, 582 U.S. at 139). If a claim arises in a new context, the second step requires a court to determine whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits

---

[3] The decision in *Egbert* was the twelfth time.

of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* (internal quotation marks and citation omitted). And "[i]f there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 493 (internal quotation marks and citation omitted).

With those principles in mind, and after conducting a *de novo* review, *see Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 403 (2d Cir. 2015), we cannot infer a *Bivens* cause of action for Cohen's claims because there is reason to hesitate before extending *Bivens* to this new context. Cohen sues a former President, a former Attorney General of the United States, FCI Otisville's warden, and officers and agents of the BOP and the PTS. Cohen's Fourth Amendment claim involves "new categor[ies] of defendants" that were not contemplated in *Bivens*. *See Egbert*, 596 U.S. at 492 (internal quotation marks and citation omitted); *see also Bivens*, 403 U.S. at 389 (claims alleged against agents of the now-defunct Federal Bureau of Narcotics). The same holds true for Cohen's Eighth Amendment claim against the defendants who are not prison officials. *See Carlson*, 446 U.S. at 16 (claims alleged against federal prison officials).

To the extent that Cohen contends that his Eighth Amendment claim does not arise in a new context because—like in *Carlson*—he also sues prison officials, Cohen's claim presents only "superficial similarities" to *Carlson*, which is "not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495. Unlike in *Carlson*, which involved allegations of deliberate indifference to serious medical needs, *see* 446 U.S. at 16 n.1, here Cohen alleges unconstitutional conditions of solitary confinement, *see* App'x at 27–28. These differences are

6

1   sufficient to conclude that Cohen's claims arise in a new context. *See Ziglar*, 582 U.S. at 147

2   ("[E]ven a modest extension is still an extension.").

3   Because this case involves a new context, we must determine whether any special factors

4   are present. We note that there are significant separation-of-powers concerns with extending

5   *Bivens* to Cohen's claims against many of the instant categories of defendants, which by itself is

6   reason to counsel hesitation. *See Ziglar*, 582 U.S. at 133–34. We need not address those concerns,

7   however, because Cohen's attempt to extend *Bivens* fails for an independent and far simpler

8   reason. Not only did Cohen have available to him "other alternative forms of judicial relief," *see*

9   *id.* at 145 (internal quotation marks and citation omitted), he was *successful* in pursuing other

10  forms of judicial relief. Indeed, Cohen filed a petition for a writ of habeas corpus and a motion

11  for an emergency TRO, and the district court issued an injunction within a matter of days releasing

12  Cohen from imprisonment to home confinement. *See* App'x at 39–40. Under the circumstances

13  presented here, a successful petition for habeas relief is sufficient to foreclose Cohen's *Bivens*

14  claims. *See Ziglar*, 582 U.S. at 144–45. While this relief may not have made Cohen whole, "when

15  alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 145. "Nor does

16  it matter that existing remedies do not provide *complete* relief." *Egbert*, 596 U.S. at 493 (emphasis

17  added) (internal quotation marks and citation omitted). Cohen therefore does not have a viable

18  claim for damages under *Bivens* for the alleged violations of his Fourth and Eighth Amendment

19  rights.

20                     \*      \*      \*

21

1      We have considered all of Cohen's remaining arguments and find them to be without merit.

2  Accordingly, we **AFFIRM** the judgment of the district court.

3

4                                FOR THE COURT:
5                                Catherine O'Hagan Wolfe, Clerk of Court

*[Signature and seal of the United States Court of Appeals for the Second Circuit]*